23-6141
*United States v. Oladokun*

MENASHI, *Circuit Judge*, concurring in part and concurring in the judgment:

In this appeal, Oladayo Oladokun argues that the district court erred by calculating the loss amount under U.S.S.G. § 2B1.1(b)(1) to include "the greater of actual loss or intended loss," which is what the application note to the guideline instructed the district court to do. U.S.S.G. § 2B1.1, comment. (n.3(A)). According to Oladokun, the application note was invalid because it "expand[ed] the plain meaning of the actual Guideline text" to "include intended loss" in addition to actual loss. Appellant's Br. 14.

We have squarely rejected this argument. *See United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024) ("[T]he application note defining loss is neither inconsistent with nor a plainly erroneous reading of the guideline. … [T]he guideline does not contradict the understanding expressed in the commentary that 'loss' encompasses intended loss."). And we have rejected it again. *See United States v. Zheng*, 113 F.4th 280, 300 (2d Cir. 2024) ("[I]t was proper for the district court to defer to the Guidelines commentary interpreting 'loss' in § 2B1.1(b)(1)."). And we have rejected it a third time. *See United States v. Pasternak*, No. 23-6316, 2024 WL 4763986, at *4 (2d Cir. Nov. 13, 2024) ("[T]he Guideline is not in conflict with the commentary's explanation that 'loss' includes the total amount paid."). And we have done so still a fourth time. *See United States v. Rech*, No. 23-6477, 2024 WL 5165454, at *1 (2d Cir. Dec. 19, 2024) ("In *Rainford*, we held that the Guidelines commentary that includes 'intended loss' in the definition of 'loss' remains authoritative after *Kisor*. We therefore conclude that the District Court properly deferred to the Guidelines commentary interpreting 'loss' under § 2B1.1(b)(1).") (citations omitted).

In today's opinion, however, the court declines to cite our binding precedent to say that Oladokun's argument is foreclosed. The court instead insists that it "need not address Oladokun's arguments regarding the Guidelines commentary to Section 2B1.1(b)(1)," as if something more than a mere citation were required. *Ante* at 9. I do not join that part of the court's opinion and instead concur in the judgment on the ground that Oladokun's argument is foreclosed by precedent. Because the court erroneously suggests that our precedents are somehow open to question, I write separately to explain the applicable law.

I

The guidelines provide for a sentencing enhancement when the "loss" attributable to the offense exceeds certain levels. U.S.S.G. § 2B1.1(b)(1). In the version of the Guidelines Manual in effect at the time of Oladokun's sentencing, an application note clarified that the "loss is the greater of actual loss or intended loss." *Id.* § 2B1.1, comment. (n.3(A)) (2021).

In *Stinson v. United States*, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. 36, 38 (1993). In *Rainford*, we explained that "[w]e adhere to *Stinson*," and we applied that standard to conclude that the application note defining loss is "neither inconsistent with nor a plainly erroneous reading of the guideline." 110 F.4th at 475 & n.5. "[T]he term 'loss' in § 2B1.1 has no one definition and can mean different things in different contexts, so the guideline does not contradict the understanding expressed in the commentary that 'loss' encompasses intended loss." *Id.* at 475

2

(internal quotation marks omitted). For that reason—as we have subsequently reiterated—"the district court, relying on the Guidelines commentary, properly used intended loss when calculating [the] Guidelines sentencing range." *Zheng*, 113 F.4th at 300.

That precedent applies straightforwardly here. Because application note 3(A) validly clarified the scope of "loss" in § 2B1.1(b)(1) as referring to the greater of actual or intended loss, the district court properly calculated Oladokun's loss enhancement based on the intended loss amount.

## II

Oladokun offers a similar challenge to the district court's application of a two-level enhancement for an offense involving ten or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(i). He argues that the district court erred by consulting the definition of "victim" in the application note. The application note explains that, "in a case involving means of identification," the victims include not only someone who suffered an actual loss but also "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1, comment. (n.4(E)).

According to Oladokun, the term "victim" in the guideline is "not ambiguous in any sense" but refers only to those who have suffered an actual loss. Appellant's Br. 18. The plain meaning of the term therefore excludes a "possible victim of an identity theft offense" that "resulted in no financial loss." *Id.* Given the lack of ambiguity, says Oladokun, the district court erred in consulting an application note that "expands the Guideline definition" beyond that plain meaning. *Id.*

This argument rests on a misunderstanding of the role of the guidelines commentary. "Because the Sentencing Commission adopts the commentary alongside the guidelines … the guidelines and the commentary operate together as a reticulated whole, and accordingly the two are to be read together." *Rainford*, 110 F.4th at 475 n.5 (internal quotation marks and citation omitted). We have explained that "[t]he guideline provision and the commentary 'are to be read together' because 'no threshold test of ambiguity need be passed before the commentary can be consulted.'" *Id.* at 486 (alteration omitted) (quoting *United States v. Pedragh*, 225 F.3d 240, 244 (2d Cir. 2000)). "Rather, commentary explains the guidelines and provides concrete guidance as to how even *unambiguous* guidelines are to be applied in practice." *Pedragh*, 225 F.3d at 244 (quoting *Stinson*, 508 U.S. at 44). "Only when 'the commentary contradicts the provision's text' does 'the provision's plain language control.'" *Rainford*, 110 F.4th at 486 (alterations omitted) (quoting *United States v. Lewis*, 93 F.3d 1075, 1080 (2d Cir. 1996)).

Again, our precedents foreclose Oladokun's argument that a district court may not consult an application note when applying a purportedly unambiguous guideline.

### III

In *Stinson*, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38. Oladokun suggests that the guidelines commentary may no longer be considered authoritative following the decisions of the Supreme Court in *Kisor v. Wilkie*, 588 U.S. 558 (2019), and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Stinson* analogized

4

the Sentencing Commission's commentary to the guidelines to a federal agency's interpretation of a regulation that it has promulgated pursuant to the Administrative Procedure Act. *See Stinson*, 508 U.S. at 45 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). According to Oladokun, the deference accorded to the guidelines commentary must follow the deference accorded to such an agency interpretation. And under current precedent an agency interpretation of a regulation may be consulted "only if a regulation is genuinely ambiguous." *Kisor*, 588 U.S. at 573. In addition to being foreclosed by our precedent, the argument is unpersuasive.

## A

First, *Loper Bright* said nothing about deference to an agency interpretation of a regulation. Oladokun invoked *Loper Bright* at the oral argument and, in a confused footnote to its opinion, the majority wrongly suggests that *Loper Bright* might affect our treatment of the guidelines commentary. *See ante* at 10 n.3. But *Loper Bright* does not implicate *Stinson*. Rather, that case considered the deference to be accorded to an agency interpretation—that is itself reflected in a binding regulation or adjudication, *see United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)—of a statute passed by Congress. In doing so, *Loper Bright* overruled *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).

In *Stinson*, the Supreme Court explained that the commentary of the Sentencing Commission is not analogous to an agency interpretation of a statute. "We … find inapposite an analogy to an agency's construction of a federal statute that it administers," said the Court, because the commentary "has a function different from an agency's legislative rule" and, "unlike a legislative rule, is not the product of delegated authority for rulemaking." *Stinson*, 508 U.S. at

5

44. The *Stinson* standard, therefore, does not depend on the status of *Chevron*. *See id.* (declining to rely on *Chevron*); *see also Kisor*, 588 U.S. at 591 (Roberts, J., concurring in part) ("Issues surrounding judicial deference to agency interpretations of their own regulations are distinct from those raised in connection with judicial deference to agency interpretations of statutes enacted by Congress.").

B

Second, *Kisor* did not purport to overrule or to modify *Stinson*. Even if we thought that *Kisor* suggested a different approach to guidelines commentary would be appropriate, if "the Supreme Court has not overruled *Stinson*," we may not conclude that it has. *Rainford*, 110 F.4th at 475 n.5. Rather, when "a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions." *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

Nor does *Stinson* depend on the case law governing deference to an agency interpretation of a regulation. To be sure, the Court in *Stinson* identified a helpful "analogy" to that case law when deciding how to treat the guidelines commentary. *Stinson*, 508 U.S. at 44. The Court cautioned that "the analogy is not precise," but it noted "respects" in which "this type of commentary is akin to an agency's interpretation of its own legislative rules." *Id.* at 44-45. It did not simply apply *Seminole Rock* to the guidelines commentary but set forth a standard of deference applicable specifically to "commentary in the Guidelines Manual that interprets or explains a guideline." *Id.* at 38. Thus, "while *Stinson* drew from *Seminole Rock*, the two doctrines were distinct from the beginning and remain distinct today. It does not

6

follow that refining *Seminole Rock* automatically refines *Stinson*." *United States v. Vargas*, 74 F.4th 673, 682 (5th Cir. 2023) (citation omitted).[1]

At the same time, "*Kisor* did not discuss *Stinson* at all: it merely included *Stinson* in a footnote string-cite of sixteen cases described as 'decisions applying *Seminole Rock* deference,'" a footnote that "signals no intention to change *Stinson*" because it "is merely descriptive and is not even joined by a Court majority." *Vargas*, 74 F.4th at 681 (quoting *Kisor*, 588 U.S. at 569 n.3). The substance of the discussion in *Kisor*, moreover, does not extend to the Sentencing Commission. "*Kisor* had everything to say about executive agencies and precious little about the Sentencing Commission." *United States v. Maloid*, 71 F.4th 795, 806 (10th Cir. 2023). That is "a critical distinction" because "[t]he Commission is neither an executive agency nor strictly limited by the APA." *Id.*; *see also* 28 U.S.C. § 991(a) (establishing, "as an independent commission in the judicial branch," the "United States Sentencing Commission"). For that reason, it is not possible to "say that *Kisor* meant for its new standard—crafted entirely in the context of executive agencies—to reach the Commission." *Maloid*, 71 F.4th at 807.

---

[1] *See also United States v. Riccardi*, 989 F.3d 476, 491 (6th Cir. 2021) (Nalbandian, J., concurring in part and in the judgment) ("Though *Stinson* considered *Seminole Rock* in deciding to extend deference to guideline commentary, we have viewed *Stinson* deference as creating an independent standard since its inception."); *United States v. Moses*, 23 F.4th 347, 352 (4th Cir. 2022) ("[E]ven though the two cases addressed analogous circumstances, *Stinson* nonetheless continues to apply when courts are addressing Guidelines commentary, while *Kisor* applies when courts are addressing executive agency interpretations of legislative rules.").

**C**

Third, even if we were free to revisit *Stinson* in light of the analogy between the guidelines commentary and an agency interpretation of a regulation, that analogy does not require a reconsideration of *Stinson*. The Supreme Court in *Kisor* considered the objection that *Seminole Rock* deference "encourages agencies to issue vague and open-ended regulations, confident that they can later impose whatever interpretation of those rules they prefer." *Kisor*, 588 U.S. at 585 (citing John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612, 654-69 (1996)). According to that objection, deference to agency interpretations "supplies agencies with a shortcut around the APA's required procedures for issuing and amending substantive rules that bind the public with the full force and effect of law." *Id.* at 608 (Gorsuch, J., concurring in the judgment). The agency might follow the required notice-and-comment procedures to promulgate the regulation, but the agency may then effectively revise the regulation through an interpretation announced, for example, in a "guidance document issued without affording the public advance notice or a chance to comment." *Id.*[2]

This objection does not neatly apply to the commentary of the Sentencing Commission. While "executive agency interpretations have been made … casually and broadly through, for example, the issuance of letters, opinions, press releases, and legal briefs without the notice-and-comment procedures of rulemaking," the "formally

---

[2] *See* Douglas H. Ginsburg & Steven Menashi, *Our Illiberal Administrative Law*, 10 NYU J.L. & Liberty 475, 508 (2016) ("[A]gencies frequently avoid the notice-and-comment safeguard by resorting instead to adjudications, interpretive rules, and policy statements or guidance documents.").

published Guidelines Manual" combines together "not only Guidelines and policy statements but also official commentary, all three of which were, in practice, generally promulgated by the notice-and-comment and congressional-submission procedure and which operate together as a reticulated whole." *Moses*, 23 F.4th at 355. Indeed, the Guidelines Manual explains that the commentary "accompanies the guideline sections" in order to avoid "an incorrect application of the guidelines." U.S.S.G. § 1B1.7.

Because of this integration of the commentary with the guideline sections, the "Sentencing Commission routinely publishes notice of its intention to amend the commentary and application notes to the Guidelines," and "[h]istory reflects that Congress has actively overseen the substance of the commentary to the Guidelines." *United States v. Rivera*, 76 F.4th 1085, 1090 (8th Cir. 2023); *see also United States v. Ponle*, 110 F.4th 958, 963 (7th Cir. 2024) ("The fact that the advisory note at issue underwent the public notice and comment process and [c]ongressional review distinguishes it from an executive agency's internal interpretation of its own regulations that animated the Supreme Court's concern in *Kisor*.").

At the time *Stinson* was decided, moreover, the guidelines commentary appeared to resemble an agency interpretation because the guidelines—like legislative rules promulgated through notice-and-comment procedures—were "bind[ing]." *Stinson*, 508 U.S. at 42 (quoting *Mistretta v. United States*, 488 U.S. 361, 391 (1989)); *see also* 18 U.S.C. § 3553(b)(1). Thus, the *Stinson* Court could conclude that "the guidelines are the equivalent of legislative rules adopted by federal agencies" and therefore that the Sentencing Commission's commentary that aims "to assist in the interpretation and application" of those binding guidelines was "akin to an agency's interpretation of its own legislative rules." *Stinson*, 508 U.S. at 45.

Once the guidelines became "effectively advisory," *United States v. Booker*, 543 U.S. 220, 245 (2005), the analogy to regulatory interpretation became even less straightforward. Under the advisory system, a sentencing court must *consider* the sentencing range the Sentencing Commission effectively recommends through a guidelines calculation, but it need not *adopt* the recommended sentence. There is no evident reason why the recommendation of the Sentencing Commission must be determined according to the Sentencing Commission's advisory guideline provisions while ignoring the Sentencing Commission's advisory commentary about how the provisions apply.

Nothing in *Kisor*—or in the deference doctrines applicable to agency interpretations of legislative rules—requires that result. If legislative rules were merely advisory, *Kisor* would make no sense. The distinctive feature of a legislative rule is that it has "the force and effect of law," *Kisor*, 588 U.S. at 583 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015)), and therefore imposes "legally binding requirements on private parties," *id.* at 584 (internal quotation marks omitted).[3] For that reason, "the meaning of a legislative rule remains in the hands of courts," and the purpose of the *Kisor* framework is to ensure that "[n]o binding of anyone occurs merely by the agency's say-so." *Kisor*, 588 U.S. at 584.

After *Booker*, however, the appropriate sentence already remains in the hands of the courts, and no mere say-so of the

---

[3] *See also Kisor*, 588 U.S. at 615 (Gorsuch, J., concurring in the judgment) ("Under the APA, substantive rules issued by federal agencies through notice-and-comment procedures bear the force and effect of law and are part of the body of federal law, binding on private individuals, that the Constitution charges federal judges with interpreting.") (internal quotation marks and footnote omitted).

10

Sentencing Commission binds the courts or anyone else. *See Booker*, 543 U.S. at 245. Because the guidelines and the commentary have the same legal status and are adopted through the same process, there is no obstacle to recognizing that "the guidelines and the commentary operate together as a reticulated whole, and accordingly the two are to be read together." *Rainford*, 110 F.4th at 475 (internal quotation marks and citation omitted). No rule-of-law principle requires a sentencing court to calculate the advisory guidelines range in isolation from the advisory commentary.

### D

Fourth, "because the Sentencing Commission adopts the Guidelines and the commentary as a reticulated whole that should be read as such, the commentary qualifies as an authoritative source of interpretation under *Kisor*." *Zheng*, 113 F.4th at 299-300 (internal quotation marks omitted). In other words, "the commentary necessarily reflects the Commission's 'authoritative, expertise-based, fair, or considered judgment.'" *Rainford*, 110 F.4th at 475 n.5 (quoting *Kisor*, 588 U.S. at 573); *see also Pedragh*, 225 F.3d at 244 ("[S]ince the commentary is part and parcel of the Sentencing Guidelines Manual and … is written by the same body that is charged with drafting the guidelines, the two are to be read together.").

There is no concern that the guidelines commentary does not (1) represent the Sentencing Commission's "authoritative or official position, rather than any more ad hoc statement not reflecting the agency's views," (2) "implicate its substantive expertise," or (3) "reflect fair and considered judgment" rather than "a merely convenient litigating position or *post hoc* rationalization." *Kisor*, 588 U.S. at 577-79 (internal quotation marks and alteration omitted).

It is true that under our precedents "no threshold test of ambiguity need be passed before the commentary can be consulted," *Rainford*, 110 F.4th at 486 (quoting *Pedragh*, 225 F.3d at 244), whereas *Kisor* directs that deference to an agency interpretation of a regulation "can arise only if a regulation is genuinely ambiguous," *Kisor*, 588 U.S. at 573. But that difference results from (1) the different legal status of a guideline provision that, unlike a regulation, has the same merely advisory status as the commentary that interprets it, and (2) the different purpose of the guidelines commentary as compared to agency interpretation.[4] "The Sentencing Commission is judicial in nature" while "the role of other federal agencies is typically executive" such that "[t]heir interpretations seek not just to inform and guide but also to regulate the broad range of people covered by the particular agency's jurisdiction, and they do so without the express authorization of Congress." *Moses*, 23 F.4th at 355. Such "differences justify a distinct approach in considering Guidelines commentary, on the one hand, and an agency's interpretation of its legislative rules, on the other. And treating the two differently is entirely consistent with *Kisor*." *Id*.

\* \* \*

For these reasons, I would reject Oladokun's arguments that the district court should have disregarded the guidelines commentary as foreclosed by applicable precedent. Because the court declines to do so, I concur only in part and in the judgment.

---

[4] *See Moses*, 23 F.4th at 356 ("*Kisor* deference, as the *Kisor* Court explained, comes into play only when agencies are *interpreting* their regulations. But the Sentencing Guidelines provide a broader role for commentary, as recognized in *Stinson*.").

12